## TOULMIN AND WIFE *vs.* SAGER, Guardian.

[BILL IN EQUITY TO FORECLOSE MORTGAGE.]

1. *Act of November 17th, 1862, applicable only to contracts for payment of money.*—The act " to regulate the interest upon debts in payment of which Confederate treasury-notes may be tendered and refused," approved November 17th, 1862, is applicable only to contracts *for the payment of money*, and has no application to promissory notes payable in Confederate treasury-notes.

2. *Damages for breach of contract payable in Confederate currency.*—The measure of damages in an action at law, founded upon the breach of a contract for the payment of Confederate treasury-notes, is the value of the note sued on at the time it was to be paid, with interest.

3. *Tender, in kind.*—When a note is not payable in money, the article in which payment is to be made must be tendered at the time and place fixed by the contract for payment to have effect as a tender.

4. *Same; discharge of mortgage lien.*—Whether, if the tender had been made and refused *on the day* the note became due, the effect would have been to have discharged the lien created by the mortgage given to secure the payment of the note. *Query.*

APPEAL from the Chancery Court of Mobile.
Heard before the Hon. N. W. COCKE.

THE bill in this case was filed by Richard G. Sager, guardian of James G. and Helen M. Sager, on the 2d of December, 1865, and sought to forclose a mortgage executed by Martin Toulmin and his wife Francis H., to said Richard G. Sager, guardian, &c., to secure the payment of a certain note made by said Martin Toulmin to said guardian, on the 28th November, 1862, for five thousand dollars, payable twelve months after date, with interest, at the rate of eight per cent per annum, negotiable and payable at the bank of Mobile. The land conveyed by this mortgage was particularly described in the bill. The bill alleged, " that said Martin Toulmin has paid all interest due on said note, up to the 28th November, 1864, but none of the principal has been paid, nor any interest that has accrued since that time, whereby said mortgage is forfeited in law, but an equity of redemption still remains in said defendant." The prayer of the bill was that said Martin Toulmin and Francis H., his wife, be made defendants to the bill; that the said premises be sold and the proceeds arising from the same be applied to said mortgage debt, and for general relief. The defendant, Martin Toulmin, in his answer, admitted that he made the note described in the bill, and that he and his said wife joined in the mortgage to secure the payment of the note, but as a matter of defense alleged that he tendered to one Marsh, (who was the agent of the complainant in Mobile, transacting all his business, he being absent in Europe,) as such agent, the full amount of prin-

cipal and interest on said note, and that he did so on the third day of December, 1863, and said agent refused to receive the money so tendered, and that on the sixth or seventh of December, 1863, he made another tender through a friend to said Marsh, as such agent, of the full amount of principal and interest on said note, and said agent again refused to receive the money so tendered; that the tender was made in Confederate States treasury-notes; that the consideration of the note for which the mortgage was given was Confederate States treasury-notes loaned to defendant, and that he was to pay the note in the same kind of currency; that the fair, just and equitable value of the note, and the measure of recovery was a reduction of the nominal amount of the note to the value of that amount of Confederate States treasury-notes in gold and silver coin at the maturity of the note, and interest on such sum from the 28th November, 1864, at the rate of one-fourth of one per cent. per annum, augmented by the difference between the value of specie and United States' legal tender treasury-notes at the date of the decree, if plaintiff was entitled to any interest at all. The cause having been submitted to the chancellor on the pleadings and testimony, he held that the complainants were entitled to relief; that the consideration of the note described in the pleadings was the loan of Confederate States treasury-notes, and that it was understood between the parties that it was to be paid in said treasury-notes; and ordered that it be referred to the master to ascertain the value of said treasury-notes as loaned at the date of said loan, to-wit: the 28th day of November, 1862, and the interest on said value from the 28th day of November, 1864, up to which date it appeared the interest was paid. The master made his report, which was confirmed, and the land ordered to be sold to satisfy the note. The defendants appealed to this court, and assigned as error the decree of the chancellor.

J. LITTLE SMITH, for appellants.

JUDGE, J.—An act of the legislature " to regulate the interest upon debts in payment of which Confederate treas-

ury-notes may be tendered and refused," approved November 17th, 1862, is as follows :

"That if it shall be made to appear to any court of this State, in any suit or proceeding hereafter commenced upon any contract hereafter made, express or implied, for the payment of money, that before the commencement of the suit or proceeding the defendant or defendants therein, or his or her personal representative, tendered payment of the debt in treasury-notes of the Confederate States, and the plaintiff refused to receive them at their par value, it shall not be lawful for the plaintiff in said suit or proceeding to recover more than one-fourth of one per cent. per annum interest on said contract."

The note and mortgage, which are the foundation of the present suit, were executed subsequent to the enactment of the statute cited, and it is contended that the evidence shows they fall within the provisions of the act. We need not decide the question whether this act can have operative effect as to contracts and transactions consummated thereunder prior to its becoming a dead letter, for the reason that the act has no application to contracts other than those "*for the payment of money.*" Such is not this case, the chancellor having attained the conclusion from the evidence that it was understood between the parties at the time of the execution of the note, that it should be discharged by a payment in Confederate States treasury-notes. The act in question, therefore, has not the application contended for.

2. We have held that in an action at law, founded upon the breach of a contract for the payment of Confederate States treasury-notes, the proper rule of damages is, the value of the notes at the time they were to be paid, with interest thereon.—See *Kirtland v. Moulton,* decided at the present term. It follows that the chancellor erred in adopting a different rule in the present case, for the ascertainment of the amount due on the note.

3. The tender relied on by appellant can not be made available for any purpose. Had it been made and refused *on the day* the note became due, the effect might have been to discharge the lien created by the mortgage.—*Merritt v.*

*Lambert,* 7 Paige, 3 74.    The excuse set up in the answer for not having made it on that day, is not sufficiently sustained by the evidence.    And the tender, as made, can not have the effect to stop the running of interest, for the reason that the note was not to be paid in money ; the rule in such case being, that the article in which payment is to be made, must be tendered at the time and place fixed by the contract for payment, to have effect as a tender.—See *Bradley v. Powe,* decided at the present term, and authorities there cited.

For the error pointed out, the decree must be reversed and the cause remanded.